**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SYBIL MARIE LITTLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **CSRA, et al.,** | ) | **1:19-CV-00147-ECM-SRW** |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

By order entered February 28, 2019, the District Judge referred this case to the undersigned for action or recommendation on all pretrial matters. Doc. 3. Plaintiff *pro se* Sybil Marie Little filed this action against her former employer, identified as General Dynamics Information Technology dba CSRA, on February 26, 2019. Little amended her complaint on March 11, 2019, alleging that her former employer is liable under Title VII of the Civil Rights Act of 1964 for maintaining a hostile work environment and for retaliation, and liable under Alabama common law for negligent and wanton supervision and retention. On April 9, 2019, Little's former employer moved to dismiss Little's claims.

In connection with her opposition to that motion, Little moved for leave to amend her complaint a second time, and her motion was granted. Little filed her second amended complaint on June 29, 2019, naming as defendants General Dynamics Information Technology, Inc. ("GDIT"), and CSRA.[1] In her second amended complaint, Little alleges that Defendants are liable to her under Title VII for maintaining a hostile work environment (styled as a claim for

---

[1] Apparently, the entity that formerly employed Little is properly identified as CSRA, Inc. ("CSRA"), and is a wholly owned subsidiary of GDIT. Only CSRA has been served with Little's second amended complaint in this action, and only CSRA now moves to dismiss Little's claims.

"harassment"), for maintaining a hostile work environment and/or for discrimination (styled as a claim for "harassment culminating in adverse employment action"), for discrimination, and for retaliation, and under Alabama common law for negligent supervision and retention and wanton supervision and retention. This court has federal question jurisdiction over Little's Title VII claims pursuant to 28 U.S.C. § 1331, and may properly exercise supplemental jurisdiction over her Alabama claims at this time pursuant to 28 U.S.C. § 1367.

Now before the court is CSRA's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Little's claims for failure to state a claim upon which relief can be granted. (Doc. 28). The court has considered the motion and all of the pleadings and papers on file. For the reasons set forth below, it concludes that CSRA's motion is due to be granted in part and denied in part as moot, Little's Title VII claims are due to be dismissed without prejudice for failure to state a claim, and Little's state law claims are due to be dismissed without prejudice for lack of federal subject matter jurisdiction.

## LEGAL STANDARD

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; specifically, it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.*, *quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R. Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 556. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009), *citing Iqbal*, 556 U.S. at 678.

In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions couched in the form of factual allegations. *See Diverse Power, Inc. v. City of LaGrange, Georgia*, --- F.3d ----, Case No. 18-11014, 2019 WL 3928624, at *3 (11th Cir. Aug. 20, 2019), *quoting Twombly*, 550 U.S. at 555.

## FACTUAL BACKGROUND[2]

### I.     The Parties

Plaintiff Little is a female citizen of Alabama. Doc. 23, ¶ 3. Defendant GDIT is the corporate parent of Defendant CSRA.  Doc. 23, ¶ 6. The Defendants are headquartered in Virginia and do business in Alabama. Doc. 23, ¶ 6. Little was employed by Defendants and/or their

---

[2] Except where otherwise indicated, the following recitation construes the allegations of plaintiff Little's second amended complaint in the light most favorable to Little.

predecessor entities from 2001 through 2018, with the exception of a nine-month period in 2006, most recently as a Simulator Technician II, and previously as a Safety Liaison Coordinator.  Doc. 23, ¶ 5.

## II.   Little's Allegations Regarding the Parties' Dispute

At all material times, the Defendants apparently employed more male than female workers. Doc. 23, ¶ 12. Allegedly because of her gender, beginning in June 2010, Little began experiencing problems at work, including being told she was "too short" (notwithstanding the fact that her male counterpart was of approximately the same height), not being hired for promotions and new positions for which male candidates were hired, and not being permitted to take lunch breaks that were as long as those her male colleagues were permitted to take. Doc. 23, ¶ 12. Beginning in late 2011, Rickey Norris (a co-worker of Little's who sometimes filled in as her acting supervisor when her supervisor was not present) began harassing Little by commenting on her attractiveness, discussing the appearance of her buttocks and how they looked in jeans, asking impertinent questions about her menstrual cycle, asking her about her underwear and about her sex life with her husband, advising her to wear heels in order to get men's attention, and urging her to wear a skirt so that he could look under it while she was working under a device or walking up stairs. Doc. 23, ¶¶ 15, 21. Little implies that this same behavior continued into 2017 and beyond. Doc. 23, ¶¶ 48, 57.

In 2012, Defendants' management told Little that CSRA would give Little a good reference letter, but it did not ultimately do so. Doc, 23, ¶ 14. At around that same time, a co-worker told Little that someone in CSRA management was blocking her efforts to receive promotion. Doc, 23, ¶ 14.

Also in 2012, Little's then-new supervisor, Jason Patrick, moved her from first to second

shift, a change she found unwelcome. Doc. 23, ¶ 17. In 2015, Patrick called Little, using his company cell phone while drunk, to proposition her for sex. Doc. 23, ¶ 18. On three days in July 2016, Patrick failed to call Little to offer her overtime shifts notwithstanding the fact that she was at that time entitled under the terms of her union's Collective Bargaining Agreement with one or more of the Defendants to be the first employee called. Doc. 23, ¶ 19. In 2017, Little sued Patrick, Norris, and CSRA under Title VII for sexual harassment. Doc. 23, ¶ 19. That lawsuit ultimately terminated in favor of the defendants. Doc. 23, ¶ 28.

In February 2017, Little found a screw in the tire of her car. Doc. 23, ¶ 22. Shortly after that incident, Norris received a demotion, in connection with which he was moved from second to first shift. Doc. 23, ¶ 22. No other technician was moved off first shift when Norris was added to first shift, although at some short time thereafter, a different technician was also demoted and moved to first from second shift, and—for reasons that are unclear from Little's allegations—Little was moved back from second to first shift—her preferred shift—apparently in connection with that subsequent move. Doc. 23, ¶ 26.

At some time in 2017, a device Little relied on for the performance of her job duties went missing from her bag. Doc. 23, ¶ 24. Little's employer issued a replacement device, but her supervisor either failed to activate it or delayed activating it.  Doc. 23, ¶ 24.

In 2017, Little expected her union to negotiate a new job position for her, but it did not do so.  Doc. 23, ¶ 25. Possibly also in 2017, Little made the determination that her employer was providing negative references for her in connection with her efforts to find work for an employer other than one of the Defendants. Doc. 23, ¶ 20.

In November 2017, some of Little's co-workers had a discussion, in the course of which they expressed the opinion that female crew chiefs didn't know how to do their jobs and that

women could not repair equipment. Doc. 23, ¶ 30. In 2017 and 2018, Little found detritus and sticky substances on her desk on multiple occasions. Doc. 23, ¶ 32. At around this same time, her co-workers began using an electrical outlet near her desk, causing her to be unable to use it herself to plug in her laptop computer. Doc. 23, ¶¶ 32-33. Little's supervisor made efforts to prevent this situation from recurring, but those efforts were unsuccessful. Doc. 23, ¶ 32. Also at around this same time, two of Little's co-workers attacked her verbally in an unspecified manner. Doc. 23, ¶ 34. In early 2018, one of those co-workers told Little that she was afraid to repair equipment. Doc. 23, ¶ 35.

At some time in 2017, Little suffered a heart attack which she attributes to stress experienced in her job with the Defendants. Doc. 23, ¶ 45.

In late 2017, Little filed an Occupational Safety and Health Administration ("OSHA") complaint regarding safety violations at CSRA. Doc. 23, ¶ 43.

In late 2018, Little injured her shoulder while on the job. Doc. 23, ¶ 41. She received medical attention in connection with her injury, and paid for her care with her own medical insurance rather than through workers compensation because the injury was not documented as having occurred on the job. Doc. 23, ¶ 41.

On November 4, 2018, Little filed a charge with the Equal Employment Opportunity Commission (the "EEOC"), charging the Defendants with violations of Title VII. Doc. 23, ¶ 11. Little's November 4, 2018, EEOC charge specifically arose out of Defendants' failure to promote her in or around 2012, her thwarted expectation that her union would negotiate to create a new job position for her in 2017, Patrick's sexual proposition of 2015, the long lunch breaks that male employees sometimes took, the comments regarding her height, the harassment she was subjected to by Norris, the screw she found in her car tire, her problems with finding a place to plug in her

laptop, the detritus she found on her desk on multiple occasions in 2017 and 2018, and the negative references the Defendants provided to prospective new employers. Doc. 23, Exh. B.

Little was laid off from work on December 31, 2018. Doc. 23, ¶ 39. She did not receive severance pay from the Defendants, Doc. 23, ¶ 42, and she was not given the opportunity to transfer to other positions for which she was qualified, Doc. 23, ¶ 39. Apparently after being laid off, Little asked that her former employer stop using a "safety program" that she wrote, taking the position that the program was her intellectual property; the Defendants nevertheless continued using the program notwithstanding her request. Doc. 23, ¶ 40. Little's male co-workers who were laid off at the same time that she was were all subsequently rehired, with one exception. Doc. 23, ¶ 67.

Little has had trouble finding new work since her layoff. Doc. 23, ¶ 42. Little holds various technical certifications, including a diploma in electronic technology from Columbus Technical Institute, an associate's degree in information systems technology and networking from Thomas Nelson Community College, a bachelor's degree and a master's degree in occupational safety and health from Columbia Southern University, and a graduate certificate in human resources management from an unspecified institution. Doc. 23, ¶ 13.

## III.   Judicial Notice and/or Incorporation by Reference

### A.   Little's 2017 Action Against CSRA, Norris, and Patrick

The court takes judicial notice that on March 2, 2017, Little filed a claim against CSRA, Norris, and Patrick, 1:17-CV-00126-CSC Docs. 1, 29, alleging those defendants' liability under Title VII for maintaining a hostile work environment, and under Alabama common law for negligent and wanton supervision and outrage.[3] *See* Fed. R. Evid. 201(b); *see also*, *e.g.*, *Redner v.*

---

[3] CSRA requests that the court further take judicial notice of a 2015 Title VII sex discrimination action that Little filed against a corporate predecessor of CSRA, but good grounds do not exist for taking notice

*Citrus County, Florida*, 919 F.2d 646, 657 n.14 (11th Cir. 1990). The court further notices adjudicative facts gleaned from the papers filed in connection with Little's 2017 action, as follows. Little's Title VII and negligent and wanton supervision claims in her 2017 action arose out of her allegations "[t]hat Norris routinely made sexually derogatory comments towards the Plaintiff, stating she 'had a cute ass', 'looked good in her jeans,' 'asked her to wear dresses so he could stand at the bottom of the ladder and look up her dress and watch her climb the ladder,'" 1:17-CV-00126-CSC(WO) Doc. 29, ¶ 10, that "Norris . . . would further harass the Plaintiff about how she looked whenever she was required to tuck in her shirt[,] . . . would tell the Plaintiff how her butt looked in her jeans, . . . [and] would . . . ask[] the Plaintiff if she was on her menstrual cycle when the Plaintiff had problems . . . requiring her to change her clothes," 1:17-CV-00126-CSC(WO) Doc. 29, ¶ 11, and that "Norris told the Plaintiff on July 13, 2016[, that] she should wear heels to work not dress flat shoes as it would get men's attention . . . [and] would not leave the Plaintiff alone about wearing a skirt, dress and heels to work so he could look under her skirt or dress while the plaintiff worked under a device (crawling) or going up stairs," 1:17-CV-00126-CSC Doc. 29, ¶ 12. On August 9, 2017, the court dismissed Little's claims in her 2017 action with prejudice. 1:17-CV-00126-CSC(WO) Doc. 29, ¶¶ 40, 41. The court observed that, in connection with the EEOC charge underlying her Title VII claim in the 2017 action, Little asserted that all of Norris's harassment occurred between May and July 2016, 1:17-CV-00126-CSC(WO) Doc. 29, ¶ 40, p. 6, and further noted that in her amended complaint she alleged that Norris's harassment began in 2006 and continued through 2016, 1:17-CV-00126-CSC(WO) Doc. 29, ¶ 40, p. 9; on that basis, the court questioned whether Little properly exhausted all administrative remedies as to all of the

---

of this action, as it is not material to any issue raised in connection with CSRA's current motion to dismiss.

harassment underlying her claim.  Notwithstanding the foregoing, on the assumption *arguendo* that (despite the allegations to the contrary) all of the complained-of harassment occurred between May and July 2016 as stated in the underlying EEOC charge, the court held that, as a matter of law, Norris's complained-of harassment (while "boorish" and "immature") was not sufficiently severe or pervasive to alter the terms and conditions of Little's employment, and therefore was not actionable against CSRA as constituting a hostile work environment. 1:17-CV-00126-CSC(WO) Doc. 29, ¶ 40, pp. 9, 9-11.

**B.    Little's October 15, 2018, EEOC Charge**

CSRA proffers a copy of an October 15, 2018, EEOC charge that Little filed against CSRA, in which Little complained that in 2018 CSRA was not promoting her because someone in management was blocking her requests, and that CSRA was giving her negative employment references (apparently the same events that, in this action, Little alleges took place in 2012).  Doc. 28, Exh. A. CSRA argues that this court may properly consider the October 15, 2018, EEOC charge pursuant to the doctrine of incorporation by reference, because Little purportedly referenced the charge in her second amended complaint and because it is purportedly central to her Title VII claims.

The court disagrees with CSRA on both grounds.  First, Little's second amended complaint makes no reference to the October 15, 2018, EEOC charge. Doc. 23, ¶ 11 *et passim*. Second, although Little makes allegations in this action regarding the same conduct underlying the October 15, 2018, EEOC charge, those allegations appear to be offered by way of background, and there is no indication in the second amended complaint that any of Little's claims arise out of that conduct. Doc, 23, ¶ 14 *et passim*. Indeed, it appears clear that Little does not reference the October 15, 2018, EEOC charge in her second amended complaint precisely because it is unrelated to her

claims in this action. Notwithstanding the foregoing, because EEOC actions are matters of public record, this court may properly take judicial notice of the adjudicative fact that Little's claims in this action are not within the scope of Little's October 15, 2018, EEOC charge. *See* Fed. R. Evid. 201(b); *see also*, *e.g.*, *Hodge v. Miami Herald Co.*, Case No. 08-20633-CIV, 2008 WL 4180012, at *2 (S.D. Fla. Sept. 10, 2008).

## ANALYSIS

As noted, Little claims the Defendants are liable to her under Title VII for maintaining a hostile work environment, for "harassment culminating in adverse employment action," for discrimination, and for retaliation, and under Alabama common law for negligent and wanton supervision and retention. Little's Title VII hostile work environment claim is premised on the theory that the Defendants created a hostile work environment by permitting Norris to sexually harass her; permitting her co-workers to leave detritus and sticky substances on her desk and prevent her from plugging in her laptop computer; permitting her co-workers to leave nails or screws where she might drive over them and puncture her car's tires; and failing to rehire her after she was laid off. Doc. 23, ¶ 48. Little's Title VII claim styled as harassment culminating in adverse employment action maintains that the termination of her employment in December 2018 was due to her gender, and rises out of her termination as well as the same conduct underlying her Title VII harassment claim. Doc. 23, ¶¶ 57, 60. Little's Title VII discrimination claim contends that the termination of her employment in December 2018 was due to her gender. Doc. 23, ¶¶ 66-68. Little's Title VII retaliation claim alleges that the December 2018 termination of her employment, Defendants' failure to offer her severance in connection with her termination, the workplace harassment Little experienced, and her union's failure to negotiate the creation of a new job position for her were motivated by her decision to sue CSRA, Patrick, and Norris in 2017.  Doc.

23, ¶¶ 72-73. Little's common law negligent and wanton hiring, training, and supervision claims argue that the Defendants were negligent and wanton in hiring, training, and supervising Norris and Patrick. Doc. 23, ¶¶ 78, 82.

CSRA contends that Little's Title VII hostile work environment and common law claims should be dismissed on *res judicata* grounds because they purportedly were raised, or could have been raised, in one or more of Little's previous lawsuits. CSRA argues that Little's Title VII claims should be dismissed to the extent they are premised on allegations not raised in her EEOC charge(s), and that her Title VII discrimination claim should be dismissed in its entirety because the adverse employment action underlying that claim was not raised before the EEOC. CSRA further maintains that Little's common law claims are barred by the applicable statute of limitations. In the alternative, CSRA argues that Little's common law claims fail on their merits because she has not asserted any tort claim against either Norris or Patrick under Alabama law, that Little's Title VII hostile work environment claim fails on its merits because the complained-of conduct was not sufficiently egregious as a matter of law to constitute a hostile work environment, and that Little's Title VII retaliation claim fails on its merits because Little has not plausibly alleged that any of the underlying conduct was motivated by retaliatory animus.

For the reasons set forth below, Little's Title VII claims are due to be dismissed for failure to exhaust administrative remedies to the extent they are premised on the termination of her employment, the failure to offer her severance pay in connection with her termination, and/or the failure to rehire her following her termination, and are otherwise due to be dismissed for failure as a matter of law to state a claim upon which relief can be granted. In the absence of any viable federal claim in this action, Little's state law claims are due to be dismissed for lack of federal subject matter jurisdiction.

I.     **Failure to Exhaust Administrative Remedies (Title VII Claims)**

Prior to filing an action under Title VII, "a plaintiff must first file a charge of discrimination with the EEOC." *Gregory v. Ga. Dept. of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004); *see also Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000). It is well established that a plaintiff's federal court complaint is "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory*, 355 F.3d at 1280 (citation, internal quotation marks omitted). Novel allegations are permissible to the extent they "amplify, clarify, or more clearly focus the allegations in the EEOC complaint," but allegations of new acts of discrimination are prohibited. *Id.* at 1279-1280 (citation, internal quotation marks omitted).

As noted, Little's November 4, 2018, EEOC charge specifically arose out of Defendants' failure to promote her in or around 2012, her thwarted expectation that her union would negotiate to create a new job position for her in 2017, Patrick's sexual proposition of 2015, the long lunch breaks that male employees sometimes took, the comments regarding her height, the harassment she was subjected to by Norris, the screw she discovered in her car tire, her problems with finding a place to plug in her laptop, the detritus she found on her desk on multiple occasions in 2017 and 2018, and the negative references the Defendants provided to prospective new employers. Doc. 23, Exh. B. In particular, Little's EEOC charge makes no reference to her termination or to any events taking place after her termination—and it could not, since her termination took place after she filed the charge. In consequence, Little's Title VII claims are due to be dismissed to the extent premised on her termination, Defendants' failure to rehire her following her termination, and any other conduct that could not reasonably be expected to fall within the scope of an EEOC investigation of the conduct described in Little's November 4, 2018, EEOC charge.

II.    *Res Judicata* **(Title VII Hostile Work Environment Claim(s))**

> The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as "res judicata."  Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).  Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim.  *Id.*, at 748-49, 121 S.Ct. 1808.  By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal modifications original).

Analysis of the preclusive effect of a holding or judgment requires the court to consider both the facts and the legal theories of the claims raised in the two cases at issue.  *See Manning v. City of Auburn*, 953 F.2d 1355, 1359 (11th Cir. 1992).  Where the substance and facts of the claims are not materially distinguishable, the later-filed claim is precluded. *See id.* Specifically, a cause of action is barred on *res judicata* grounds where the following elements are present:

> (1) there must be a final judgment on the merits; (2) the decision must be rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases.

*I.A. Durbin, Inc. v. Jefferson National Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986) (citations omitted).

CSRA argues that this court is bound to find Little's Title VII claims barred by the doctrine of *res judicata* to the extent they are premised on Norris's complained-of harassment. The court agrees with CSRA that Norris's alleged harassment underlying Little's 2017 action is identical to the alleged harassment underlying Little's Title VII claims in this action, except that Little now

alleges that the complained-of conduct took place after she filed her complaint in that action, and Little adds that Norris asked inappropriate questions about her underwear and about her sex life with her husband. The court further agrees that the court in the 2017 action squarely addressed the question of whether the complained-of conduct was actionable as constituting a hostile work environment, that the court issued a final judgment, that the court was a court of competent jurisdiction, and that the parties are identical in both cases. However, the court declines to recommend that Little's claims in this action be found to be barred under the doctrine of *res judicata* to the extent they are premised on Norris's complained-of conduct, because (as will be discussed below), in analyzing whether a Tile VII hostile work environment claim will lie, the court is bound to consider whether *all* unwelcome workplace conduct, *considered together*, was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. *See*, *e.g.*, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). Complained-of conduct which, considered in isolation, is not as a matter of law sufficiently severe or persuasive to alter the terms and conditions of employment may, when considered together with other, additional conduct, be deemed sufficiently severe or persuasive to become actionable under Title VII. The holding in the 2017 action therefore does not preclude the possibility that Norris's complained-of conduct, considered together with additional workplace conduct of Norris and of others, could give rise to a viable Title VII claim. Little's claims therefore are not due to be dismissed in whole or in part on *res judicata* grounds.

## III.    Adequacy of Little's Allegations to State a Claim (Title VII Claims)

It is unlawful under Title VII for a covered employer to discriminate against any individual in connection with the terms and conditions of employment because of that individual's membership in a protected class such as race. *See* 42 U.S.C. § 2000e-2(a)(1). An employer is

covered for Title VII purposes if the employer employed fifteen or more employees on each work day in each of twenty or more calendar weeks in the current or preceding calendar year. *See* 42 U.S.C. § 2000e(b). Here, Little has not expressly alleged the number of persons employed by GDIT and/or CSRA but, for present purposes, the undersigned assumes *arguendo* that it may fairly be inferred from Little's allegations that the Defendants are large companies, each employing in excess of the threshold number of employees.

In relevant part, three causes of action are potentially available to Little under Title VII on the facts as she has alleged them: (1) gender-discriminatory hostile work environment, (2) gender discrimination, and (3) retaliation for opposing gender discrimination. "To establish a hostile work environment claim under Title VII, a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment.'" *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016), *quoting Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012). To state a *prima facie* hostile work environment claim under Title VII, a plaintiff must allege that (1) she is a member of a protected class (such as gender), (2) she was subjected to unwelcome harassing behavior, (3) the harassment was motivated by her membership in the protected class, (4) the harassment was sufficiently severe and/or pervasive to alter the terms and conditions of her employment and to create a discriminatorily abusive working environment, and (5) grounds exist for holding the employer liable for the harassment. *Id.*, citing *Gupta v. Fla. Board of Regents*, 212 F.3d 571, 582 (11th Cir. 2000). To state a *prima facie* gender discrimination claim under Title VII, a plaintiff must allege that (1) she is a member of a protected class (such as gender), (2) she was subjected to adverse employment action, (3) she was qualified for the job at issue, and (4) her employer treated one or more employees outside her protected class

more favorably, where such other employees were similarly situated in all material respects to the plaintiff. *See Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220-1221, 1221-1226 (11th Cir. 2019). To state a *prima facie* retaliation claim under Title VII, a plaintiff must allege that (1) she engaged in statutorily protected activity, (2) she was subjected to adverse employment action, and (3) the employer subjected her to adverse employment action because of her protected activity. *See Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012) (citations omitted).

Here, as noted, Little attempts to state claims under Title VII as follows:  (1) a hostile work environment claim styled as a "harassment" claim, (2) a claim effectively premised on both hostile work environment and on affirmative adverse employment action styled as a claim for "harassment culminating in adverse employment action," (3) a discrimination claim premised on the termination of Little's employment, and (4) a retaliation claim premised on allegedly retaliatory conduct motivated by Little's decision to sue CSRA, Patrick, and Norris in 2017. As discussed above, Little has not exhausted her administrative remedies prior to bringing her Title VII claims to the extent those claims are premised on the termination of her employment or any conduct taking place in connection with her termination, and her claims therefore will not lie to the extent premised on those grounds. Excluding from consideration the termination of Little's employment and the related conduct, the distinctions Little appears to draw between her claims for hostile work environment and discrimination and her claim styled as "harassment culminating in adverse employment action" necessarily collapse. That is, excluding from consideration the grounds that fall clearly outside Little's EEOC charge, the "harassment" and the "harassment culminating in adverse employment action" claims are premised on precisely the same conduct; the court therefore construes these two claims as a single hostile work environment claim. The grounds

16

excluded from consideration in connection with the "harassment culminating in adverse employment action" claim are also the sole grounds underlying the discrimination claim; in the absence of any cognizable supporting allegations, the discrimination claim necessarily fails and is due to be dismissed, as is the "harassment culminating in adverse employment action" claim to the extent premised on Little's termination and/or the Defendants' subsequent failure to rehire her.

As to the hostile work environment claim, to the extent that claim falls within the scope of the underlying EEOC charge, it is premised on the theory that the Defendants created a hostile work environment for women by permitting Norris to sexually harass her, permitting her co-workers to leave detritus and sticky substances on her desk and prevent her from plugging in her laptop computer, and permitting her co-workers to leave nails or screws where she might drive over them, puncturing her car's tires. Doc. 23, ¶¶ 48, 57.

The test for whether harassing conduct is sufficiently severe or pervasive to alter the terms and conditions of a plaintiff's employment includes both an objective and a subjective component. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). The plaintiff must subjectively perceive the environment to be abusive, and the conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment. *Id.* at 21. The Supreme Court has noted that "[w]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances," such as (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating; and (4) whether it unreasonably interfered with the employee's work performance. *Id.* at 23; *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-271 (2001). The courts of the Eleventh Circuit have held that, "in order to establish that a workplace constitutes a hostile work environment, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Butler v. Alabama Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008) (internal modification, quotation marks omitted), *quoting Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002).

Here, the complained-of conduct is insufficiently pervasive or severe to be actionable as an objectively hostile work environment under Title VII. First, none of the conduct was objectively intimidating in any significant sense, and there is no suggestion in Little's allegations that she at any time felt that her safety was threatened. Second, Little does not allege any factual grounds in support of her conclusion that the screw that she found in her tire had been deliberately placed where she would run over it by any of her co-workers, and it appears to be purely speculative that they did so. Third, while the complained-of conduct was patently offensive and highly inappropriate for the workplace, Little expressly alleges that she was able to perform her job duties notwithstanding the unwelcome behavior, *e.g.* Doc. 23, ¶¶ 32-33; she does not allege with specificity any facts to support the conclusion that the conduct was sufficiently frequent or widespread to satisfy the pervasiveness element; and it appears clear from the allegations of the second amended complaint that Little would like to be reinstated to her old position notwithstanding the offensive conduct of some of her co-workers. A finder of fact could not reasonably conclude on the basis of Little's allegations that, considering the totality of the alleged circumstances, the conduct modified the conditions of Little's employment so as to create a discriminatorily hostile environment under the standard that the court must apply.

Moreover, the allegations of the second amended complaint are likewise insufficient to establish the existence of grounds for holding either Defendant liable for the complained-of conduct. As to the practice of leaving trash and the like on Little's desk and of preventing Little

from using the electrical outlet located near her desk, Little expressly alleges that her supervisor made attempts (albeit unsuccessful ones) to prevent the behavior from recurring, Doc. 23, ¶ 32, and the second amended complaint does not contain allegations suggesting in other than wholly conclusory fashion that the Defendants' management-level employees had any awareness of the great majority of the complained-of conduct, Doc. 23, *passim*. Absent grounds to support the conclusion that the Defendants knew or should have known of the harassing conduct but nevertheless failed to take prompt remedial action, the Defendants cannot be liable for Little's co-workers' harassing conduct. *See Miller v. Kenworth of Dothan Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002).

As to the retaliation claim, to the extent that claim falls within the scope of the underlying EEOC charge, it is premised on the theory that Little's co-workers harassed her and that her union failed to negotiate a new job position for her in retaliation for Little's decision to sue CSRA, Patrick, and Norris in 2017. However, Little's second amended complaint contains no non-conclusory allegation supporting the proposition that the complained-of conduct could plausibly have been motivated by retaliatory animus.  Indeed, as to the harassment by co-workers, Little expressly alleges that it began and occurred long before she initiated her 2017 action,[4] and it is only by inference that one can determine that the conduct continued thereafter, Doc. 23, ¶¶ 15-16, 18. As to her union's failure to negotiate a new job position for her, no grounds are alleged for concluding either that the union was motivated to retaliate against Little for her lawsuit or that, if it were, the Defendants could be liable for the union's retaliatory actions, Doc. 23*, passim*. Absent the allegation of facts sufficient to support the conclusion that the complained-of conduct was

---

[4]  In fact, as noted, precisely the same harassing conduct by co-workers complained of in this action was also complained of in the 2017 action.

motivated by retaliatory animus, the second amended complaint cannot state a Title VII retaliation claim. *See Gate Gourmet*, 683 F.3d at 1258.

For the foregoing reasons, each of Little's Title VII claims is due to be dismissed without prejudice.[5]

## IV.    **Federal Subject-Matter Jurisdiction Over Little's State-Law Claims**

Because each of Little's federal claims is due to be dismissed, in light of the relatively early stage of these proceedings the court should decline to exercise supplemental jurisdiction over Little's state law claims. *See* 28 U.S.C. § 1367(c)(3) ("[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim ... if ... the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ("[i]n the usual case in which all federal-law claims are eliminated before trial, the balance of the factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims"). No grounds are present here for deviation from the rule articulated by the *Carnegie–Mellon* court. Little's state law claims are therefore due to be dismissed *sua sponte* without prejudice for lack of federal subject matter jurisdiction, and CSRA's motion is due to be denied as moot to the extent that it addresses the merits of those claims.

### CONCLUSION

For the foregoing reasons, the undersigned recommends that CSRA's motion to dismiss (Doc. 28) be granted in part and denied in part as discussed above, that Little's Title VII claims be

---

[5]  Although dismissal of Little's Title VII claims should be without prejudice, good grounds do not exist for affording her leave to amend her complaint further at this time, for two reasons. First, many of the deficiencies of Little's pleading cannot be cured unless Little first files and pursues to exhaustion an EEOC charge addressing the complained-of conduct.  Second, Little has twice amended her complaint previously in this action without successfully remedying its identified deficiencies.

dismissed without prejudice for failure to state a claim upon which relief can be granted, and that Little's state law claims be dismissed without prejudice for lack of federal subject-matter jurisdiction.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **October 23, 2019**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, on this the 8th day of October, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge